### BLAIR & HUGHES v. A. I. ROOT CO. OF TEXAS.  (No. 3736.)

Court of Civil Appeals of Texas.  Texarkana.
Dec. 4, 1929.

Rehearing Denied Dec. 12, 1929.

R. L. Stennis, of Dallas, for appellants.
Seay, Seay, Malone & Lipscomb, of Dallas, for appellee.

LEVY, J.  The appellee brought the suit upon an itemized sworn account for quantities of honey alleged to have been sold and delivered to appellants.  The amount claimed to be due and unpaid was $1,329.60, with interest thereon.  The appellants entered a general denial, and by cross-action sought to recover damages in the sum of $2,453 for alleged breach of contract to ship and deliver 60,000 pounds of honey at the fixed prices stated.  It was claimed in the cross-action that appellee agreed to ship and deliver on the orders of appellants 60,000 pounds of honey, and that it delivered only 10,940 pounds, leaving undelivered 49,060 pounds, thereby causing a loss to appellants of 5 cents per pound, or the aggregate sum of $2,453.  In the cross-action it was alleged as follows: "Blair & Hughes admits that A. I. Root Company of Texas shipped to it a certain quantity of honey and by virtue of the terms of said contract as herein alleged, and that by the terms of said contract Blair & Hughes is indebted to the A. I. Root Company of Texas in the sum of $1,329.60, which said amount Blair & Hughes is and at all times has been ready and willing to pay, provided the A. I. Root Company of Texas will pay to Blair & Hughes the damages sustained by Blair & Hughes on account of the breach of said contract as herein alleged."  The appellee replied to the cross-action, denying that it ever agreed to sell and deliver to appellants the quantity of honey alleged, and specially setting up that if appellants placed any orders for the alleged given quantity of honey they were placed, not with appellee, but with the Kennedy Brokerage Company, an independent brokerage company, and that all orders received by appellee from and brought about by the Kennedy Brokerage Company and other brokers were upon the expressly agreed condition that appellee was able to obtain honey in sufficient quantities within the particular trade territory of South Texas to fill such orders in due order of priority; that appellee was unable to obtain honey from the trade territory in sufficient quantity to fill all orders in due order of priority, because of weather conditions and freezing that affected and reduced the usual production of honey.

The case was tried before a jury, and the court entered judgment in favor of plaintiff for the amount sued for, with interest thereon, and a recovery upon the cross-action was denied the defendants.

Blair & Hughes were wholesale merchants. The A. I. Root Company of Texas was a corporation, and B. I. Solomon was its representative and manager.  The A. I. Root Company of Texas at the time in question was marketing honey exclusively for the bee keepers of Southwest Texas.  W. D. Kennedy, under the trade name of the Kennedy Brokerage Company, was conducting a general independent brokerage business.  In the course of his

regular business, W. D. Kennedy negotiated orders for comb honey produced in Southwest Texas from Blair & Hughes to the extent of 60,000 pounds, deliverable in six lots of 10,000 pounds each. This was in April, 1920. Before negotiating the orders, W. D. Kennedy obtained from B. I. Solomon quotation of prices for comb honey produced in Southwest Texas, for shipment in May and June of the season of 1920. As stated by Mr. Kennedy: "I don't recall having referred to Blair & Hughes in my negotiations (for prices) with A. I. Root Company at that time." On April 6 Blair & Hughes submitted W. D. Kennedy their first order for 10,000 pounds of comb honey. On April 16, W. D. Kennedy wired the A. I. Root Company of Texas as follows: "Book Blair & Hughes for ten thousand pounds, and Black Brothers, Clarksville, for five thousand pounds." On April 17 A. I. Root Company wrote a letter to W. D. Kennedy, which reads: "We confirm your night letter of the 16th—Book Blair & Hughes for ten thousand pounds honey, also Black Bros., Clarksville, five thousand." Upon receipt of this letter W. D. Kennedy mailed to A. I. Root Company of Texas a copy of the shipping instructions furnished by Blair & Hughes. Blair & Hughes submitted to W. D. Kennedy their further orders for shipment of 10,000 pounds of comb honey, namely, on April 10 two orders, on April 14 one order, on April 17 two orders. W. D. Kennedy testified that these five orders were sent in at the different dates to A. I. Root Company of Texas and were accepted by it, and then shipping instructions were sent in. B. I. Solomon testified that all these five orders were confirmed, not to Blair & Hughes, but to W. D. Kennedy, and were accepted upon the express condition of "delivery governed by conditions beyond our control." He further says that that condition was inserted because "honey is not a manufactured product, but a product from a flower, and it cannot be foreseen in April what is going to happen in May and June." Honey was shipped to the amount of 10,940 pounds, but not more than that, for the reason as shown, that a frost and freeze occurring in the early part of April greatly affected the production of honey in Southwest Texas. As testified, "Early flow of honey was cut down that spring at least seventy per cent." because the frost and freeze destroyed "the nectar of what is called the 'Juallia plant.'" Afterwards, in the early part of May, Mr. Solomon visited Dallas; and at that time, according to evidence in behalf of appellants, Mr. Solomon orally admitted to Mr. Kennedy and Mr. Blair, namely: "We have accepted your orders for sixty thousand pounds of honey, and we will ship it to you. You are going to get your honey." Mr. Solomon affirmatively denied making such statement. Though briefly stated, the above are the major facts shown in the case. The controversy is en-

tirely that of whether or not the A. I. Root Company of Texas accepted the five orders for honey without condition.

The following issues were submitted to the jury: "Q. 1. Upon the occasion of B. I. Solomon's visit to Wiley Blair, Junior, in the spring or summer of 1920 did the said Solomon unconditionally promise, in substance, that the plaintiff would ship the entire sixty thousand pounds of honey which the defendant claims to have ordered from plaintiff? Answer yes or no. If you answer issue No. 1 no you will not answer any further issues." The jury made answer of, "No." There is evidence to support the jury finding.

By the first and second assignments of error, appellants urge that the appellee's suit was not founded upon an "open account" provable by affidavit, as provided by article 3736, Rev. St. 1925, and therefore no competent proof was made by appellee authorizing a judgment in its favor. It is believed the suit was properly founded upon an open account provable, as done, upon affidavit in formal requirements of the law. No denial was made of any of the items of the account, and appellants did not controvert, but admitted in their cross-action, that the sum sued for was due and owing.

By assignments of error Nos. 21, 28, 29, and 30, error is predicated upon the giving of special issue No. 1 because of the word "unconditionally" appearing therein. Appellants' requested charge was in phraseology substantially the same as the one given by the court, omitting the word "unconditionally." It was a material inquiry in the state of the evidence as to whether or not the orders of Blair & Hughes transmitted to the Kennedy Brokerage Company, and by the Kennedy Brokerage Company sent to appellee, were unconditionally accepted by appellee. That was the theory upon which the case was tried, and the evidence in that respect was conflicting. The precise objection cannot be sustained.

By assignment of error No. 32, error is predicated upon the refusal to submit the requested issue reading: "Could the plaintiff have reasonably delivered to the defendant during the months of May, June, July and up to August 28, 1920, the balance of the honey referred to in issue No. 1?" As the record shows, the court did submit the identical issue in the language used, and therefore error may not be predicated upon the ground of refusal to submit this charge. The court, however, did tell the jury not to answer further issues if issue No. 1 was answered, "No." But since no objection was taken upon the action of the court in that respect, either by assignment of error or in motion for a new trial, this court cannot review it.

As to the refusal to submit other special issues and as to matters relating to the admission of certain evidence, no complaint was made in the motion for a new trial. We nevertheless have considered each one of the as-

signments, and conclude that they should be overruled as not presenting error warranting a reversal of the judgment.

The judgment is affirmed.